**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**REGINALD L. CLEMONS,**

          Petitioner,

   v.           5:04-CV-409
               (FJS)
**UNITED STATES OF AMERICA,**    Related Criminal Action
               5:00-CR-386
         Respondent.

_____

**APPEARANCES**          **OF COUNSEL**

**REGINALD L. CLEMONS**
**10386-052**
FCI Allenwood
P.O. Box 2000
White Deer, Pennsylvania 17887
Petitioner *pro se*

**OFFICE OF THE UNITED**     **ANDREW T. BAXTER, AUSA**
**STATES ATTORNEY**       **CARL G. EURENIUS, AUSA**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Respondent

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

  On August 2, 2000, a grand jury for the Northern District of New York returned an indictment against Petitioner Reginald L. Clemons, which charged him with possessing and intending to distribute crack cocaine. *See United States v. Clemons*, 5:00-CR-386 ("Action No. 00-CR-386"), Dkt. No. 1 ("Indictment"). On August 22, 2000, Petitioner made an initial

appearance before then-Magistrate Judge Gary L. Sharpe without the benefit of counsel. At that proceeding, then-Magistrate Judge Sharpe informed Petitioner of the rights he possessed regarding the charges against him, concluded that Petitioner financially qualified for court-appointed counsel, and appointed the Federal Public Defender's Office for the Northern District of New York to represent Petitioner. *See Clemons v. United States*, 5:04-CV-409 ("Action No. 04-CV-409"), Dkt. No. 12, Attachment A ("Arraignment Tr."), at (unnumbered pages) 3-4. Thereafter, then-Magistrate Judge Sharpe entered a not guilty plea on Petitioner's behalf and remanded him back to custody. *See* Arraignment Tr., at (unnumbered pages) 4-6.

The following day, Assistant Federal Public Defender David Secular filed a notice of appearance on Petitioner's behalf. *See* Action No. 00-CR-386, Dkt. No. 9. Subsequently, the parties entered into several stipulations in which Petitioner requested a continuance of his trial. *See id.*, Dkt. Nos. 11-14. Shortly before the trial was to begin, Petitioner's counsel advised this Court that Petitioner intended to plead guilty to the charges, and on September 11, 2001, Petitioner appeared before this Court to enter his change of plea.[1] Att that time, Petitioner acknowledged that he was aware that the Government had filed an Enhanced Penalty Information against him and that he was subject to a maximum term of thirty (30) years imprisonment for his conviction on all four counts in the Indictment. *See* Action No. 386, Dkt. No. 37, Transcript of Change of Plea ("Plea Tr."), at 3-9. After this Court advised Petitioner of the various rights he was waiving by pleading guilty to the charges, the Government placed the factual basis for the plea, the accuracy of which Petitioner acknowledged, on the record. *See* Plea Tr. at 9-12. This

---

[1] Apparently the parties did not enter a formal written plea agreement before Petitioner entered his guilty plea. *See* Action No. 04-CV-409, Dkt. No. 5, Memorandum of Law in Opposition to Motion to Vacate, at 1.

Court then accepted Petitioner's guilty plea to all four charges against him in the Indictment. *See id.* at 12-14.

On September 30, 2002, Petitioner appeared before this Court for sentencing. At that time, this Court found Petitioner's criminal history category to be VI and his total offense level to be 31. *See* Action No. 00-CR-386, Dkt. No. 58, Transcript of Sentencing ("Sentencing Tr."), at 7. Therefore, Petitioner was subject to a term of imprisonment of 188 to 235 months under the United States Sentencing Guidelines. *See id.* The Court then sentenced Petitioner to concurrent terms of 188 months imprisonment on each of his four convictions. *See id.* Thereafter, it appears that appellate counsel filed an *Anders* brief[2] in conjunction with Petitioner's appeal, *see* Action No. 04-CV-409, Dkt. No. 5, at 2, after which the Second Circuit summarily affirmed Petitioner's conviction. *See id.* at 3.

On April 12, 2004, Petitioner filed the present Motion to Vacate, Set Aside or Correct his Sentence. *See* Action 04-CV-409, Dkt. No. 1 ("Motion to Vacate").[3] In that application, Petitioner claims that he received the ineffective assistance of trial counsel because Mr. Secular improperly failed to argue that the Federal Government did not have jurisdiction to prosecute Petitioner for his crimes because he "was arrested in the state of New York by local law enforcement officers, not on . . . property belonging to the Federal Government." *See* Motion to

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

[3] Although Petitioner purports to allege three grounds for his Motion to Vacate, the first ground in that pleading merely asserts that he received ineffective assistance of trial counsel without the benefit of any supporting facts; on the other hand, the remaining two grounds for his Motion to Vacate set forth the legal theories upon which he bases his claim of ineffective assistance of counsel. *See* Motion to Vacate at 5-6. This Court, therefore, considers Petitioner's Motion to Vacate as alleging two grounds in support of his claim that he received ineffective assistance of trial counsel.

Vacate at 5.  In a related claim, Petitioner contends that a "County Magistrate" issued the search warrant in the criminal proceedings below and that state officers executed that search warrant. *See id.*  Petitioner argues that, because federal officials neither obtained nor executed that search warrant, his prosecution in federal court for his crimes was improper.  *See id.* at 5-6.

The Government filed its memorandum in opposition to Petitioner's Motion to Vacate on July 8, 2004, *see* Action No. 04-CV-409, Dkt. No. 5, after which Petitioner filed a reply memorandum of law, *see id.*, Dkt. No. 8 ("Reply").  In his Reply, Petitioner alleges several theories in support of his application, which he did not raise in his Motion to Vacate. Specifically, he contends that his trial counsel's failure to advise him of the strength of the Government's case and to advise him promptly to change his plea resulted in the Court imposing an enhanced sentence that it would not otherwise have imposed.  *See id.* at 5.  Petitioner additionally argues that he was wrongfully denied the assistance of counsel at his arraignment, thereby preventing him from "plead[ing] intelligently" to the charges against him.  *See id.* at 3-4. Finally, Petitioner claims that appellate counsel rendered ineffective assistance by failing to allege that trial counsel's performance was deficient.[4]  *See id.* at 5.  The Government has filed a surreply in which it argues that all of the claims that Petitioner raises, including those he has asserted for the first time in his Reply, are without merit.  *See* Action No. 04-CV-409, Dkt. No. 12 ("Surreply").

---

[4] In his Reply, Petitioner also re-asserts his claim that this Court did not have any jurisdiction over him because he did not make his drug sales on property that the federal government owned or over which "federal criminal laws may be administered."  *See* Reply at 6. He also reiterates his contention that, because non-federal officials issued and/or executed the search warrant, he could not properly be tried in federal court on the charges arising out of the material seized during the execution of that warrant.  *See id.* at 6-10.

## II. DISCUSSION

As a preliminary matter, the Court notes that the Government does not argue that the one-year statute of limitations applicable to motions to vacate brought pursuant to 28 U.S.C. § 2255 in light of the Antiterrorism and Effective Death Penalty Act of 1996 bars any of the claims that Petitioner has asserted for the first time in his Reply. *See, generally*, Surreply. Additionally, the Second Circuit has emphasized that courts within this Circuit are to construe a *pro se* litigant's papers liberally. *See, e.g., Marmolejo v. United States*, 196 F.3d 377, 378 (2d Cir. 1999) (construing application for certificate of appealability filed in § 2255 application as a notice of appeal (citations omitted)); *Parke v. United States*, No. 5:97-CV-526, 2004 WL 437464, *2 (N.D.N.Y. Feb. 17, 2004) (noting that the "court must afford Parke, as a *pro se* litigant, a liberal reading of his papers, and interpret them 'to raise the strongest arguments that they suggest'" (quotation omitted)).

In the present case, since Respondent does not contend that the applicable one-year statute of limitations bars any of Petitioner's claims or that the fact that Petitioner has belatedly raised certain claims for the first time in his Reply has prejudiced Respondent, the Court will consider the additional claims that Petitioner has raised in his Reply as further theories in support of his application for federal habeas relief. *See, e.g., Powell v. United States*, Nos. 97-CV-0365E, 95-CR-8E, 2000 WL 1047810, *2 (W.D.N.Y. July 26, 2000).

### A.     Ineffective assistance of counsel

In determining whether a criminal defendant received ineffective assistance of trial counsel, federal district courts must consider whether (1) trial counsel's representation fell below

an objective standard of reasonableness as measured by the prevailing professional norms and (2) whether counsel's performance prejudiced the petitioner, i.e., whether there is a reasonable probability that, but for counsel's performance, the outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688-90, 694 (1984); *United States v. Levy*, 377 F.3d 259, 264 (2d Cir. 2004) (quotation and other citations omitted); *United States v. Champion*, 234 F.3d 106, 109 (2d Cir. 2000) (quotation omitted); *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998) (*per curiam*) (citing *Strickland*, 466 U.S. at 688-90, 694, 104 S. Ct. 2052) (other citation omitted).

As noted above, Petitioner asserts several theories in support of his claim that his trial counsel rendered ineffective assistance. Specifically, he claims that Mr. Secular wrongfully failed to (1) argue that the Indictment was jurisdictionally defective, *see* Motion to Vacate at 5; (2) seek suppression of evidence obtained as a result of the search warrant because state and county officials, rather than federal officials, issued and executed that warrant, *see id.*; and (3) advise Petitioner of the strength of the Government's case against him and to enter a guilty plea to the charges promptly, *see* Reply at 3-5.

### *1. Claimed jurisdictional defects in the Indictment*

Petitioner initially argues that, because the sale of drugs that formed the basis of the Indictment against him did not occur on federal property or as a result of any federal investigation related to him, the Indictment was fatally defective and his trial counsel rendered ineffective assistance by failing to move to dismiss the Indictment on that ground. *See* Motion to Vacate at 5; Reply at 6-10.

Under the Commerce Clause of the United States Constitution, Congress has the power to regulate commerce among the states, *see* U.S. Const., Art. I, § 8,[5] as well as activity that substantially affects interstate commerce. *See United States v. Lopez*, 514 U.S. 549, 558 (1995) (quotation omitted). As the Supreme Court has observed, Congress has broad power under the Commerce Clause to regulate activity that is purely intrastate in character "where the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations." *Fry v. United States*, 421 U.S. 542, 547 (1975) (citations omitted). Additionally, the Second Circuit has specifically determined that 21 U.S.C. § 841(a)(1), which Petitioner was accused of violating, criminalizes conduct that "undoubtedly has a substantial impact on interstate commerce." *Proyect v. United States*, 101 F.3d 11, 14 (2d Cir. 1996) (*per curiam*) (upholding validity of 21 U.S.C. § 841(a)(1) in face of claim that enactment of statute exceeded Congress' powers under the Commerce Clause) (citations omitted); *see United States v. Genao*, 79 F.3d 1333, 1336 (2d Cir. 1996) (upholding validity of 21 U.S.C. § 846) (citations omitted). Thus, "[t]he fact that certain intrastate activities . . . may not actually have a significant effect on interstate commerce is . . . irrelevant." *Proyect*, 101 F.3d at 14 (footnote and other citation omitted). Furthermore, congressional findings codified in 21 U.S.C. § 801 establish that even the local manufacture, distribution, and possession of controlled substances substantially affects interstate commerce. *See* 21 U.S.C. § 803(3), (5); *see also Proyect*, 101 F.3d at 12-13 (citations omitted); *Genao*, 79 F.3d at 1335-36 (citations omitted); *United States v. Beatty*, No. (SG)94 Cr. 631, 1996 WL 308677, *3-*4 (S.D.N.Y. June 7, 1996) (citations omitted). In light of

---

[5] The Commerce Clause empowers Congress "[t]o regulate Commerce . . . among the several States." U.S. Const., Art. I, § 8, cl. 3.

the fact that the United States had jurisdiction to prosecute Petitioner on the offenses alleged in the Indictment, Mr. Secular clearly did not render ineffective assistance by failing to move to dismiss the Indictment on jurisdictional grounds.

### 2. Failure to seek suppression of evidence

Petitioner next argues that, because the search warrant that secured the drug evidence used to prosecute him was obtained without any involvement of federal officials, his prosecution in federal court on the drug charges was improper. *See* Motion to Vacate at 5-6; Reply at 10. This claim, however, appears to overlook the well-settled principle that "'a federal court's review of a state search warrant secured by local police officials and employed in a federal prosecution is the Fourth Amendment and its requirements, and no more.'" *United States v. Workman*, 80 F.3d 688, 694 (2d Cir. 1996) (quoting *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993)). Petitioner has never alleged, in the underlying criminal action or in this proceeding, that legal deficiencies regarding the manner in which state and county officials sought, obtained and/or executed the search warrant violated his Fourth Amendment rights.[6] Since there was no legal basis for Petitioner's counsel to argue properly that the evidence obtained against Petitioner was inadmissible due to the fact that it was obtained through the use of state and county, rather than federal, officials, Petitioner's claim alleging that his trial counsel was ineffective in this regard is without merit.

---

[6] Mr. Secular did file a pretrial omnibus motion in the underlying criminal matter, but, in that application, he did not seek the exclusion of any physical evidence obtained against Petitioner in conjunction with the underlying criminal investigation. *See* Action No. 00-CR-386, Dkt. No. 15.

### *3. Failure to encourage Petitioner to enter a prompt guilty plea and advise him of the strength of the Government's case*

In his Reply, Petitioner argues for the first time that his trial counsel "was ineffective for delaying the proceedings, and in failing to advise Petitioner promptly to change his plea." *See* Reply at 4. Specifically, Petitioner claims that, if his counsel had advised him to enter a guilty plea promptly, he "could have possibly avoided the enhanced sentence" that the Court ultimately imposed on him due to the fact that the Government filed an Enhanced Penalty Information against him. *See id.* at 4-5. He also alleges that "[b]ut for counsel's failure petitioner was exposed to at least 147 months, and perhaps 155 months greater than he could have received if counsel would have promptly advised petitioner of his true options." *See id.* at 5. Finally, in what appears to be a related claim, Petitioner asserts that his attorney failed to inform him in a timely manner of the strength of the evidence that the Government possessed against him. *See id.*

Petitioner has not provided the Court with any evidence that supports his claim that his attorney improperly "delayed the proceedings" or failed to pursue a strategy that would have resulted in his pleading guilty to the charges.[7] To the contrary, the record reflects that Mr. Secular began representing Petitioner on August 23, 2000, *see* Action No. 00-CR-386, Dkt. No. 9, and that approximately one month later, defense counsel and the Government filed a joint stipulation with the Court for a continuance of the trial, in which Mr. Secular noted that "[c]ounsel for the defendant and the government continue to be engaged in plea negotiations." *See* Action No. 00-CR-386, Dkt. No. 10, at ¶ 2(a). Mr. Secular and the United States Attorney

---

[7] A petitioner bears the burden of proving that he is entitled to relief under § 2255. *See Parsons v. United States*, 919 F. Supp. 86, 88-89 (N.D.N.Y. 1996) (citation omitted).

entered into several other stipulations after that date, similarly indicating that Petitioner's counsel was exploring the possibility of a plea agreement with the Government as to the charges brought against Petitioner. *See id.*, Dkt. Nos. 11-14. Petitioner's counsel thereafter filed an omnibus motion on behalf of Petitioner, the substance of which the Court resolved during a conference with the parties on July 17, 2001. *See id.*, Dkt. Nos. 15-16. On July 19, 2001, Mr. Secular and the Government filed another joint stipulation seeking a continuance of the criminal matter. *See id.*, Dkt. No. 21. In that application, Mr. Secular noted that Petitioner would "qualify as a career offender for purposes of sentencing should he be convicted of the charges presently pending," and expressly indicated that, although "the parties continue to experience difficulties in finalizing a pretrial disposition" of the pending charges, counsel "anticipated that these negotiations may very well result in a plea disposition." *See id.*, Dkt. No. 21, at ¶ 2(a). Less than two months later, Petitioner entered his guilty plea to the charges in the Indictment. *See id.*, Dkt. No. 37.

  Petitioner has not provided the Court with any evidence that his counsel's references to plea negotiations made in the numerous stipulations that he filed on behalf of Petitioner were factually inaccurate in any way. Nor has Petitioner provided any evidence to substantiate his claim that Mr. Secular failed to apprise him of the strength of the Government's case against him. In this regard, the Court notes that, although Petitioner had filed an application in the underlying criminal matter to obtain new counsel, *see* Action No. 00-CR-386, Dkt. No. 22, at the hearing before this Court related to that request, Petitioner expressed his desire to retain Mr. Secular as counsel and did not state that he believed that his attorney's performance was deficient in any way. *See* Action No. 04-CV-409, Dkt. No. 13, at 3. Additionally, at the hearing at which Petitioner ultimately pled guilty, he represented to the Court that he was "satisfied with the

advice and representation [that he] received in this matter." *See* Plea Tr. at 9.

With respect to Petitioner's claim regarding the length of the sentence that this Court imposed on him, the record conclusively establishes that Petitioner boasted a substantial criminal record at the time he was indicted for the subject federal crimes. Specifically, the sentencing transcript reveals the Court's comments regarding Petitioner's criminal history:

> Mr. Clemons, you have had a violent history[,] you have had a bad history of criminal conduct, there's no question about it. There's no question you have to be sentenced – and you are a career offender – as a career offender . . . .

*See* Sentencing Tr. at 6-7.

There is no evidence upon which this Court could properly conclude that it would not have been advised of Petitioner's status as a career offender – which in turn resulted in the Guideline range of imprisonment within which he was ultimately sentenced – had Petitioner pled guilty to the crime prior to September, 2001.

In sum, nothing in the record suggests that Petitioner could have properly pled guilty to the charges prior to the time at which defense counsel and the Government ultimately arrived at such an agreement in September, 2001. Nor has Petitioner provided evidence to support his claims that he would have received a lesser sentence had he pled guilty to the crimes prior to September 11, 2001, or that Mr. Secular failed to advise Petitioner in a timely manner of the strength of the Government's case against him. Accordingly, the Court denies this aspect of Petitioner's Motion to Vacate.

**B.     Denial of counsel at arraignment**

Petitioner also argues in his Reply that he was wrongfully denied his right to counsel at his arraignment before then-Magistrate Judge Sharpe on August 22, 2000.  *See* Reply at 1-5.

The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const., Amend. VI.  The Supreme Court has held that violations of this Sixth Amendment right to counsel are *per se* reversible only when they amount to an "'[a]ctual or constructive denial of the assistance of counsel altogether,'" *Penson v. Ohio*, 488 U.S. 75, 88 (1988) (quotation omitted), or when the accused was denied the benefit of counsel during a "critical stage of the proceeding."  *United States v. Cronic*, 466 U.S. 648, 659 & n. 25 (1984).  Critical stages of a criminal proceeding include "the type of arraignment . . . where certain rights may be sacrificed or lost[.]"  *United States v. Wade*, 388 U.S. 218, 225 (1967); *Grune v. Thoubboron*, No. 91 Civ. 3655, 1995 WL 130517, *1 (S.D.N.Y. Mar. 24, 1995) (quotation and other citations omitted).  Thus, where an arraignment holds "significant consequences for the accused," he is entitled to representation of counsel.  *Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (footnote omitted).  On the other hand, in situations in which the violation of the right to counsel is not *per se* reversible, courts employ a harmless error analysis to determine whether a Sixth Amendment claim warrants relief.  *See Lainfiesta v. Artuz*, 253 F.3d 151, 157 (2d Cir. 2001) (citations omitted); *Muyet v. United States*, Nos. 01 Civ. 9371, 95 CR. 941, 2004 WL 1746369, *4-*5 (S.D.N.Y. Aug. 3, 2004) (citations omitted).

Although counsel did not represent Petitioner at his arraignment, *see* Arraignment Tr. at (unnumbered page) 4, he was clearly not denied the assistance of counsel altogether during the

underlying criminal matter; to the contrary, on the day after the arraignment, Mr. Secular filed a notice of appearance on Petitioner's behalf. *See* Action No. 00-CR-386, Dkt. No. 9. Additionally, the record reflects that at Petitioner's arraignment then-Magistrate Judge Sharpe merely advised Petitioner of his rights, entered a not guilty plea on his behalf, and appointed the Federal Public Defender's Office to represent him. *See id.* at (unnumbered pages) 3-4. Thus, Petitioner did not sacrifice or lose any of his rights at that proceeding; in fact, then-Magistrate Judge Sharpe's actions ensured that Petitioner's rights were protected rather than compromised. Thus, any error in conducting that proceeding in the absence of counsel was necessarily harmless. *See, e.g., United States ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244, 246 n.2 (S.D.N.Y. 1966) (citations omitted).

In conclusion, since the absence of counsel at Petitioner's arraignment did not constitute a *per se* violation of his Sixth Amendment right to counsel and any alleged error in holding that arraignment without counsel was necessarily harmless, the Court denies this additional claim that Petitioner raises for the first time in his Reply in support of his Motion to Vacate.

### C.     Ineffective assistance of appellate counsel

The final claim that Petitioner raises in this action alleges that his appellate counsel rendered ineffective assistance in failing to argue on appeal that Petitioner received the ineffective assistance of trial counsel. *See* Reply at 5.

However, as noted above, this Court has determined that all of Petitioner's ineffective assistance of claims regarding trial counsel are without merit. Therefore, any claim that appellate counsel rendered ineffective assistance by failing to argue that trial counsel's representation was

deficient must necessarily fail. *See Steele v. United States*, Nos. 04 Civ. 6918, 02 CR. 629, 2005 WL 704868, *15 (S.D.N.Y. Mar. 29, 2005) (denying § 2255 claim alleging, *inter alia*, ineffective assistance of appellate counsel; "[a]ppellate counsel cannot be found to be ineffective for failing to raise a meritless claim on appeal" (citations omitted)); *Muyet*, 2004 WL 1746369, at * 10 (denying ineffective assistance of appellate counsel claim asserted in § 2255 application on the ground that "since . . . trial counsel was not ineffective, appellate counsel cannot be faulted for choosing not to argue on appeal the ineffective assistance of trial counsel" (citation omitted)). Therefore, the Court denies Petitioner's claim alleging ineffective assistance of appellate counsel.

### III. CONCLUSION

Accordingly, after carefully reviewing the file in this matter, the parties' submissions, including the claims that Petitioner raised for the first time in his Reply, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Petitioner's Motion to Vacate is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

Dated: May 25, 2005
       Syracuse, New York

                                                       Frederick J. Scullin, Jr.
                                                       Chief United States District Court Judge